UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMMEL REED,

               Petitioner,                     Case Number 12-11163
                                                    Honorable George Caram Steeh

v.

JEFFERY WOODS,

               Respondent.

_____/

**OPINION AND ORDER (1) DENYING AMENDED PETITION
FOR WRIT OF HABEAS CORPUS,  (2) DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND (3) DENYING
<u>PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. §

2254. Petitioner was convicted in the Jackson Circuit Court of conspiracy to deliver

cocaine, MICH. COMP. LAWS § 750.157a, and possession with intent to deliver over 1,000

grams of cocaine.  MICH. COMP. LAWS § 333.741(2)(a)(i). The trial court sentenced him to

two concurrent terms of 25-to-40 years. The amended petition raises nine claims: (1)

Petitioner's confrontation rights were violated by the admission of his non-testifying co-

defendant's taped confession; (2) Petitioner's statement to police was coerced by promises

of leniency; (3) the trial court erroneously admitted drug-profile evidence; (4) there was

insufficient evidence presented at trial to sustain Petitioner's convictions; (5) the prosecutor

committed misconduct during closing argument; (6) Petitioner was denied the effective

assistance of trial and appellate counsel regarding their failure to challenge the admissibility

of co-defendant's statement; (7) the trial court erroneously instructed the jury on the

beyond-a-reasonable-doubt standard; (8) the prosecution failed to establish the *corpus*

*delicti* of the crime; and (9) Petitioner's counsel was ineffective for failing to raise his seventh and eighth habeas claims in the state courts. The petition will be denied because none of Petitioner's claims merit habeas corpus relief. The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> On October 10, 2006, the police received a radio transmission that a silver Ford 500 and a red Yukon were traveling in tandem on I-94. An officer subsequently pulled over co-defendant Erskine Reed's Ford for a traffic violation, and defendant's Yukon continued for less than a mile before stopping at a rest area. The police found two kilograms of cocaine in co-defendant Erskine Reed's trunk and a 9-millimeter pistol on his person. Defendant was also stopped for a traffic violation and arrested for having no license on his person. The police seized $1,010 from defendant. In a statement made to the police, defendant initially denied knowing co-defendant Erskine Reed, but later admitted that Erskine was his uncle. Defendant stated that two individuals from Battle Creek called him, each requesting one kilogram of cocaine. Defendant had previously obtained two kilograms of cocaine from a house in Detroit. On the day of the planned delivery, defendant conversed with co-defendant Erskine Reed, and placed the cocaine in Erskine's trunk. Defendant accompanied Erskine for protection. The video recording of defendant's statement and co-defendant Erskine Reed's statement was played for the jury.

People v. Reed, No. 280780 (Mich. Ct. App. February 24, 2009).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief raising the following claims:

> I. The trial court clearly erred by denying Petitioner's motion to suppress his statement to police because it was induced by promises of leniency and because he was scared.

> II. The admission of co-defendant's statement violated Petitioner's

-2-

constitutional right to confrontation.

III. Petitioner was denied a fair trial by the impermissible admission of drug-profile evidence.

IV. Petitioner's conviction for possession with intent to deliver 1,000 or more grams of cocaine must be vacated because there was insufficient evidence that Petitioner possessed the cocaine seized from his co-defendant's vehicle.

V. The prosecutor improperly referenced Petitioner and co-defendant's prior bad acts during closing argument.

VI. Defense counsel was ineffective for failing to challenge the validity of the traffic stop.

VII. The trial court incorrectly scored the sentencing guidelines.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. Id.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims. The court denied the application because it was not persuaded that the questions presented should be reviewed. People v. Reed, 484 Mich. 870 (2009) (table).

Petitioner then filed a motion for relief from judgment in the trial court. The motion raised the following claims:

I. Petitioner was denied the effective assistance of counsel during his direct appeal by counsel's failure to challenge the illegal traffic stop.

II. Petitioner was denied the effective assistance of counsel during his direct appeal by counsel's failure to raise several trial errors.

The trial court denied the motion, finding that "defendant has failed to establish good cause or actual prejudice as required by Michigan Court Rule 6.508(D)(3)." Opinion Following Motion For Relief From Judgment, p. 2.

-3-

Petitioner filed an application for leave to appeal this decision in the Michigan Court of Appeals. The application was denied "for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." People v. Reed, No. 301123 (Mich. Ct. App. January 21, 2011). The Michigan Supreme Court denied relief by citation to the same court rule. People v. Reed, No. 142720 (Mich. Sup. Ct. September 6, 2011).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d)

-5-

reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III. Discussion

### A. Claims I and VI - Admission of Co-Defendant's Statement to Police

Petitioner's first claim asserts that the admission of his non-testifying co-defendant's statement to police violated his rights under the Confrontation Clause. Respondent asserts that review of the claim is procedurally defaulted because Petitioner's counsel stipulated to the admissibility of the statement. Petitioner's sixth claim rejoins that his counsel was constitutionally ineffective for stipulating to the admission of the statement.

A procedural default is "a critical failure to comply with state procedural law." Trest v. Cain, 522 U.S. 87, 89 (1997). The doctrine of procedural default prohibits a federal court from reviewing the merits of a petitioner's claims, including constitutional claims, if the state court declined to hear the claims because the prisoner failed to abide by a state procedural rule. Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).

Under Michigan law, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." People v. Gonzalez, 256 Mich. App. 212, 224

(2003). Because the Michigan Court of Appeals relied on Petitioner's stipulation to the admission of his co-defendant's statement to police into evidence as waiving appellate review of his first claim, the issue is procedurally defaulted. See McKissic v. Birkett, 200 Fed. Appx. 463, 470-71 (6th Cir. 2006).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. Gravley v. Mills, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must demonstrate that some external impediment frustrated his ability to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. Amadeo v. Zant, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).

Here, Petitioner argues in his sixth claim, that his counsel was ineffective for stipulating to the admission of the statement. In order to demonstrate that he received ineffective assistance of counsel, Petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." Id. at 689 (citation omitted). Petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

When analyzing a claim of ineffective assistance of counsel, the court "must indulge the strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (citation omitted).

The record shows that Petitioner's counsel used the contents of co-defendant's statement to show that Petitioner did not have constructive possession of the cocaine located in co-defendant's vehicle, that co-defendant was not merely Petitioner's drug mule, and that Petitioner did not even know that cocaine was being transported. Defense counsel stated during closing argument:

> Now we get to the interview from Erskine Reed and the subsequent events. Erskine Reed knew everything. "I don't know the address, but I can take you right there. I can take you right there in Battle Creek. I can take you right there in Detroit." And he did. Officer testified. Well, they're trying [to] portray Erskine Reed as what the officer testified to as a mule. Mules don't know anything. Erskine Reed knew the dope houses: A lot of dope here, a lot of dope there. "I'll take you here." He arranged to have places–I mean, with the JNET team or whatever organization. They raided different places, because he had the knowledge. He had the knowledge. And, when you speak of possession and control, if you recall, on Erskine Reed's confession, he says, "I started to take that dope and just go sell those two kilos and get that money and, oh well." Now, who has control to do that? A mule? I don't think so.

> *     *     *

> The statement towards the end of Mr. Erskine Reed's statement was really interesting, when they mentioned his nephew to him. He says, "He doesn't know why I'm here, does he?" That was interesting to me, in that, like one of the officers replied, "Well, he'd have to be retarded not to know." But, at that time, they had not communicated, so Erskine we've got to assume didn't–thought that Rommel Reed didn't even know he had the dope in the car. But, of course, he was told by other officers, but he says on there, "He

-8-

doesn't know why I'm here. I mean, he knows I'm here, but he doesn't know the reason I'm here, does he?" And look at hat. That's interesting. Why would he say that, if they were in agreement?

Trial Tr., pp 254-257.

It is clear based on this passage that defense counsel did not fail to object to the admission of the statement as a result of neglect or incompetence. Rather, counsel made a strategic decision to use the contents of the statement to support Petitioner's defense. This Court will not second-guess that presumptively reasonable strategic judgment.

Accordingly, Petitioner has failed to demonstrate that his counsel was ineffective for failing to object to admission of the statement. He has not established cause or prejudice to excuse the default of his first claim, and his sixth claim is without merit.

## B. Claim II - Admission of Petitioner's Statement to Police

Petitioner's second claim asserts that his statement to police violated his Fifth Amendment rights. Petitioner states that the police offered him leniency if he cooperated and that he was scared. Respondent argues that the state court adjudication of the claim was reasonable.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., am. 5. In conjunction with the Fourteenth Amendment's Due Process Clause, the Fifth Amendment requires that "a confession be voluntary to be admitted into evidence." Dickerson v. United States, 530 U.S. 428, 433 (2000). According to well established Supreme Court precedent, in order to admit a confession, the prosecution must show that the defendant was advised of certain basic rights - commonly known as Miranda rights - and must knowingly and intelligently waive those rights. Id. at 435.

-9-

Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid Miranda waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." Texas v. Cobb, 532 U.S. 162 (2001) (quotation and citation omitted). The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to Miranda are rare. Dickerson, 530 U.S. at 444 (citations omitted).

When a criminal defendant claims that his confession was rendered involuntary by police coercion, a court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will  of the accused. See Mincey v. Arizona, 437 U.S. 385 (1978); Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973). A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. See Colorado v. Connelly, 479 U.S. 157, 163-67 (1986). Typically, findings of coercive police conduct involve brutality or threats of physical coercion. See, e.g., Arizona v. Fulminante, 499 U.S. 279, 287-88 (1991) (threats of physical violence); Greenwald v. Wisconsin, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); Beecher v. Alabama, 389 U.S. 35 (1967) (gun held to head of wounded suspect to extract confession); Cooper v. Scroggy, 845 F.2d 1385 (6th Cir. 1988) (officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant). Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient

-10-

to overbear the will of the accused. See <u>Fulminante</u>, 499 U.S. at 287-88.

Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health."   <u>Withrow v. Williams</u>, 507 U.S. 680, 693-94 (1993) (citations omitted). A police officer's "promises to inform a prosecutor of defendant's cooperation do not, ipso facto, render a confession coerced[,]." <u>United States v. Stokes</u>, 631 F. 3d 802, 808 (6th Cir. 2011) (internal quotation omitted); <u>Walendzinski v. Renico</u>, 354 F. Supp. 2d 752, 760-61 (E.D. Mich. 2005) (a police officer's promise to bring a defendant's cooperation to the attention of the prosecutor do not render a confession involuntary).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Viewing the totality of the circumstances, the trial court did not clearly err in finding that defendant's statement was voluntary. The trial court had an opportunity to evaluate the testimony, view the video recording of the interview, and to evaluate the effect of the police officers' statements. Defendant was advised of his rights before he was questioned and voluntarily, knowingly and intelligently waived those rights, although he refused to sign a written waiver. [Citation omitted.] Although the officer made promises to defendant, most reflected a promise to make an effort to gain a more lenient outcome depending [on] the information defendant could provide. As noted, an officer told defendant that the police had no actual charging authority. Thus, the interrogating officer did not make any explicit promises to defendant with respect to actual criminal charges and sentencing. With regard to other factors, the interview was not prolonged. There was no evidence that defendant was threatened or abused, or that defendant was intoxicated under the influence of drugs, deprived of food or drink, or sleep deprived. Although defendant claims that he was "scared", there was no evidence that his psychological state was altered by fear to a degree that he was unaware or not operating of his own free will. Further, defendant was 33 years old, had a GED, and could read and write, he also had previous experience with the police and the criminal processes.

<u>Reed</u>, Mich. Ct. App. No. 280780, at *3.

This decision did not involve an unreasonable application of clearly established Supreme Court law. The record reasonably supports the state court's conclusion that the interrogating officers did not coerce Petitioner into making his statement. While Petitioner indicated that he was scared, and that the police told him that the value of any cooperation might work to his benefit, such facts did not compel the state court to find his statements to be involuntary. To the contrary, the record supports the conclusion that Petitioner voluntarily spoke with police in an effort to gain favorable treatment. The fact that Petitioner did not receive the benefit he was hoping for does not mean that the representations made by the police were illusory or that his statements were involuntary. Petitioner is therefore not entitled to habeas relief based on this claim.

## C. Claim III - Admission of Drug Courier Profile Evidence

Petitioner's third claim asserts that the trial court erroneously admitted into evidence testimony that Petitioner and his co-defendant were "caravanning" on the freeway and that this was consistent with drug trafficking. Respondent asserts that this claim is not cognizable because it only concerns an alleged violation of state evidentiary law that was rejected by the Michigan Court of Appeals during Petitioner's direct appeal.

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.' " Estelle v. McGuire, 502 U.S. 62, 67 (1991)(quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Williams v. White, 183 F. Supp. 2d 969, 977 (E.D.Mich. 2002). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981). "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they

-12-

so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994).

The admission of opinion testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. See Keller v. Larkins, 251 F. 3d 408, 419 (3rd Cir. 2001). A federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal Constitution. See Wilson v. Parker, 515 F.3d 682, 705-06 (6th Cir. 2008).

Petitioner was charged with possession with intent to deliver cocaine and conspiracy to deliver cocaine. Testimony from Officer Prause that drug traffickers often used two vehicles to ferry drugs on a freeway was relevant under state law and admissible to establish that Petitioner had an intent to deliver the cocaine was part of the delivery conspiracy. See Brown v. Berghuis, 638 F. Supp. 2d 795, 817 (E.D. Mich. 2009)(citing People v. Murray, 234 Mich. App. 46, 53-54 (1999); People v. Stimage, 202 Mich. App. 28, 29-30 (1993).

Petitioner has not demonstrated the existence of any Supreme Court authority supporting his position that admission of drug profile evidence renders a narcotics trafficking trial fundamentally unfair. Petitioner is therefore not  entitled to habeas relief because of the introduction of this drug profile evidence.

## D. Claim IV - Sufficiency of the Evidence

Petitioner's fourth claim asserts that insufficient evidence was offered at trial to sustain his convictions because the prosecutor did not prove that he constructively

possessed the cocaine found in his co-defendant's vehicle. Respondent contends that the state courts reasonably rejected the claim.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132

-14-

S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

The Michigan Court of Appeals denied Petitioner relief with respect to this claim as follows:

> Viewed most favorably to the prosecution, the evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that defendant constructively possessed the cocaine. Defendant stated that two individuals from Battle Creek called him, each requesting one kilogram of cocaine. Defendant had previously obtained two kilograms of cocaine from a house in Detroit. On the day of the planned delivery, defendant conversed with his uncle, co-defendant Erskine Reed, and subsequently placed the two kilograms of cocaine in his uncle's car. Thereafter, the two men left en route to Battle Creek for the purpose of delivering the cocaine. Defendant stated that he accompanied co-defendant Erskine Reed for protection. The police observed both men traveling in tandem on I-94, stopped co-defendant Erskine Reed's vehicle, and found the two kilograms of cocaine in the trunk. Co-defendant Erskine Reed stated that defendant had provided the cocaine for delivery and that he was the driver. When the police stopped Erskine's car, defendant traveled less than one mile before pulling into a rest stop. In addition, in his statement, defendant explained that once they arrived in Battle Creek, he was the person who would have delivered the cocaine to the two individuals, and that his uncle was a driver. This evidence established a basis for the jury to conclude that defendant had constructive possession of the cocaine found in the trunk. The evidence was sufficient to sustain defendant's conviction of possession with intent to deliver 1,000 or more grams of cocaine.

Reed, Mich. Ct. App. No. 280780, at *6.

Given Petitioner's detailed confession, this claim borders on the frivolous. Petitioner admitted that he placed the cocaine in the trunk of his co-defendant, and he admitted that he was the one who planned on delivering it to the customer in Battle Creek. A reviewing court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). An

-15-

assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000). The jury obviously chose to believe that Petitioner truthfully confessed his guilt in his statement to police. The state court adjudication of this claim was reasonable.

### E. Claim V - Prosecutorial Misconduct

Petitioner's fifth claim asserts that the prosecutor committed misconduct during closing arguments by using inflammatory language. Respondent asserts that the claim is procedurally barred because Petitioner did not object to challenged comment at trial.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181(1986) (citing Donnelly); Parker v. Matthews, __ U.S. __, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that Donnelly/Darden is the proper standard).

In Petitioner's statement to police he admitted that he had previously transported cocaine between Detroit and other cities in Michigan. The trial court allowed Petitioner's entire statement to be admitted into evidence. The prosecutor briefly mentioned that Petitioner admitted to prior drug trafficking in her rebuttal argument:

> We have got the evidence, not only from the officers, but also confirmed overwhelmingly by the confessions that there was an agreement stated by Rommel Reed and by his uncle that the agreed that morning in Detroit. They loaded up the cocaine. They were taking it to Battle Creek. They had done it before. The defendant had many contacts and he got paid large sums of

-16-

cash to take it back to Detroit. If that's not a conspiracy, then what is?

Tr. II, p. 260.

Although petitioner has framed this claim as a prosecutorial misconduct challenge, he is in essence claiming that this portion of his confession should have been excluded from evidence on the grounds that it was overly prejudicial. Therefore his claim "amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." Webb v. Mitchell, 586 F. 3d 383, 397 (6th Cir. 2009). However, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." Cristini v. McKee, 526 F.3d 888, 900 (6th Cir. 2008). Therefore, there was nothing improper about the prosecutor referring to this portion of Petitioner's admitted statement to police during closing argument. Moreover, the admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See Bugh v. Mitchell, 329 F. 3d 496, 512 (6th Cir. 2003). Accordingly, this claim cannot form the basis for granting habeas relief.

## F. Claim VII, VIII, and IX - State Post-Conviction Review Claims

Petitioner's remaining claims were presented to the state courts in his motion for relief from judgement and the appeal that followed its denial. Respondent asserts that review of these claims is barred by his procedural default of failing to comply with Michigan Court Rule 6.508(D)(3), which required him to present these claims to the state courts in his direct appeal.

-17-

As explained above, when the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.

Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. Id.

In the present case, the Jackson Circuit Court judge rejected petitioner's motion for relief from judgment, finding that Petitioner had not shown "good cause" under Mich. Ct. R. 6.508(D)(3). Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted. See Ivory v. Jackson, 509 F. 3d 284, 292-93 (6th Cir. 2007); See also Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's remaining claims are therefore procedurally defaulted.

With respect to these claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good

arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." Id. at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding Barnes, it is still possible to bring a Strickland claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. See Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appeal brief which raised a number of claims Petitioner still maintains entitle him to relief. Petitioner has not shown that appellate counsel's strategy in

presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. See McMeans v. Brigano, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because Petitioner has failed to show cause to excuse his default, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. Smith, 477 U.S. at 533; See also Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of the crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. See Matthews v. Ishee, 486 F.3d 883, 891 (6th Cir. 2007). Petitioner has failed to show that his post-conviction claims have

any merit. Petitioner is not entitled to habeas relief on his remaining claims.

The Court denies the petition for writ of habeas corpus.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous

## V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

Dated:  September 5, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

-22-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 5, 2013, by electronic and/or ordinary mail and
also on Rommel Reed #276650, Chippewa Correctional
Facility, 4269 W. M-80, Kincheloe, MI 49784.

s/Barbara Radke
Deputy Clerk